**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

---------------------------------------------------------------

In re:                                                          :
                                                                :
GLENN RANDOLPH MOORE                           :        Case No. 24-33168-KLP
JENNIFER MICHELLE FERGUSON MOORE,   :        Chapter 12
                                                                :
      Debtors.                            :

---------------------------------------------------------------

### MOTION FOR APPROVAL TO SELL REAL ESTATE FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. § 1206 AND TO AUTHORIZE THE DEBTORS TO ASSUME AND ASSIGN OPTION CONTRACT PURSUANT TO 11 U.S.C. § 365

Come now Glenn Randolph Moore and Jennifer Michelle Ferguson Moore, the debtors and debtors in possession (collectively the "**Debtors**" or the "**Moores**,"), by Counsel, and move the Court (the "**Motion**") for entry of an order: (a) authorizing the sale of the Debtors' interests in real property (the "**Property**") free and clear of liens pursuant to Section 1206 of Title 11 of the United States Code (the "**Bankruptcy Code**"), (b) authorizing the Debtors to assume and assign an option contract pursuant to Section 365 and Rules 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and (c) granting related relief. The Debtors request that the Court grant such relief and in support thereof respectfully state as follows.

David Cox, VSB 38670
Cox Law Group, PLLC
900 Lakeside Drive, Lynchburg, VA 24501
Tel: 434-845-2600
Fax: 434-845-0727
david@coxlawgroup.com
Counsel for Debtors and Debtors in Possession

## I.  SUMMARY OF RELIEF REQUESTED

Recognizing that family farmer reorganizations may often require the downsizing of the farm assets and operations, Congress implemented special provisions in chapter 12 to facilitate the sale of overencumbered property that would otherwise limit the ability of the debtor farmer to be successful.[1]  The Moores seek to utilize these provisions of chapter 12 to scale back their operations while permitting them to farm in a way that still allows them to fund their obligations to creditors under chapter 12.  To that end, the Moores seek the approval of this Court of the sale of a substantial majority of their farm real estate interests to Ole South Farms LLC ("**OSF**"), a single member limited liability company owned by Ryan Moore, the Debtors' son.   The Debtors also propose to assume and assign their interests in an **Option Agreement** (defined below) that relates to and is recorded against one of the parcels of the Property, as described more fully herein.   If the proposed sale of the Debtors' interests in Property and assignment of the Option Agreement are approved, OSF will continue to employ and compensate the Moores to operate the farm.

## II.  JURISDICTION

1.       This is a core proceeding pursuant to 28 U.S.C. § 157. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       On August 26, 2024 (the "**Petition Date**"), the Debtors filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code.

3.       As of the date of this Motion, the Debtors have not filed a chapter 12 plan, and no such plan is due until November 26, 2024.

---

[1] H.R. Rep. No. 958, 99th Cong., 2d Sess. 50 (1986).

### III. THE PROPOSED SALE OF PROPERTY OF THE ESTATE

4.      The Property subject to proposed sale pursuant to this Motion is comprised of fifteen (15) parcels of real estate.

5.      The Property is farmland and has been utilized as part of the Debtors' farming operations.

6.      One or both of the Debtors owns an interest in each parcel of the Property as indicated in the charts below (the "**Property Charts**").

7.      The Property Charts describe the Debtors' interests in each parcel comprising the Property that is the subject of this Motion.  For the purposes of this motion, the Property is comprised of parcels in two categories: **Parcel Group A** and **Parcel Group B**.

### A.  Property Chart – Parcel Group A

| Tax Parcel ID | Acres | Ownership | Tax Assessment of Whole Parcel | Appraised Value of Whole Parcel | Value of Debtors' Interest |
|---|---|---|---|---|---|
| 44-1 | 16.96 | Glenn Moore and Donald Moore as grantees[2] | $18,700.00 | $58,000.00 | $29,000.00 |
| 35-3-D | 80.30 | Glenn Moore and Donald Moore as grantees | $100,200.00 | $270,000.00 | $135,000.00 |
| 35-3-C | 109.14 | Glenn Moore and Donald Moore as grantees | $334,800.00 | $600,000.00 | $300,000.00 |
| 35-3B | 14.078 | Glenn Moore and Donald Moore as grantees | $10,600.00 | $49,000.00 | $24,500.00 |

---

[2] The deeds in Parcel Group A do not indicate a right of survivorship.  In Virginia, if a deed does not state that the property is held by survivorship, two nonmarried grantees hold the property as tenants in common. Virginia law presumes against survivorship unless it is explicitly stated in the deed. *Jones v. Phillips*, 299 Va. 285 ("If no survivorship is specified, a tenancy in common results.").   Further, under Virginia Code § 55. 1-134, survivorship between joint tenants abolished, thus reinforcing the presumption that, in the absence of explicit survivorship language, the default form of ownership is a tenancy in common.

| Tax Parcel ID | Acres | Ownership | Tax Assessment of Whole Parcel | Appraised Value of Whole Parcel | Value of Debtors' Interest |
|---|---|---|---|---|---|
| 44-30 | 123.72 | Glenn Moore and Donald Moore as grantees | $201,000.00 | $430,000.00 | $215,000.00 |
| 35-3-A | 2.7 | Glenn Moore and Donald Moore as grantees | $2,700.00 | $20,000.00 | $10,000.00 |
| 44-48-1 | 2 | Glenn Moore and Donald Moore as grantees | $1,000.00 | $21,000.00 | $10,500.00 |
| 35-3-1 | .508 | Glenn Moore and Donald Moore as grantees | $25,800.00 | $59,000.00 | $29,500.00 |
| 44-78-B | 249.66 | Glenn Moore and Donald Moore as grantees | $288,600.00 | $787,000.00 | $393,500.00 |
| 44-78 | 105.208 | Glenn Moore and Donald Moore as grantees | $171,300.00 | $332,000.00 | $166,000.00 |
| 44-48 | 8.176 | Glenn Moore and Donald Moore as grantees | $9,000.00 | $30,000.00 | $15,000.00 |
| 44-78A | 8.822 | Glenn Moore and Donald Moore as grantees | $9,700.00 | $33,000.00 | $16,500.00 |
| 36-28 | 121.28 | Donald Moore, a one-half undivided interest, and Glenn Moore and Jennifer F. Moore, husband and wife, a one-half undivided interest, as tenants in the entireties with right of survivorship as at common law | $148,100.00 | $422,000.00 | $211,000.00 |
| 44-72 | 30 | Donald Moore, a one-half undivided interest, and Glenn Moore and Jennifer Moore, a one-half undivided interest as husband and wife, as tenants by the entireties | $38,300.00 | $111,000.00 | $55,500.00 |
| | | **TOTALS:** | **$1,359,800** | **$3,222,000** | **$1,611,000** |

### B.  Property Chart – Parcel Group B

| Tax Parcel ID | Acres | Ownership | Tax Assessment of Whole Parcel | Appraised Value of Whole Parcel | Value of Debtors' Interest |
|---|---|---|---|---|---|
| 44-78C | 10.97 | Glenn Moore and Jennifer Moore as tenants by the entireties | $229,200.00 | $588,000.00 | $588,000.00 |
| | | TOTALS: | 229,200 | $588,000 | $588,000 |

### C.  Cumulative Totals of Property Values in Groups A and B

| | Acres | Tax Assessments of Whole Parcels | Appraised Value of Whole Parcel | Value of Debtors' Interest |
|---|---|---|---|---|
| TOTALS: | 883.522 | $1,589,000 | $3,810,000 | 2,199,000 |

8.      With the exception the one parcel of property identified in Parcel Group B, to wit: Parcel 44-78C, Donald Moore, the brother of Glenn Moore, owns the other remaining nondebtor interest in each parcel of the Property.

9.      As indicated in the Property Charts, the Debtors' interests in the Property have a total fair market value of Two Million One Hundred Ninety-Nine Thousand Dollars ($2,199,000.00).  This valuation is based on the appraisals (the "**Appraisals**") attached as **Exhibit A** performed by David T. Bland on June 1, 2024.[3]

10.     The Debtors received an offer from OSF to sell their interests in the Property for Two Million Two Hundred Seventy-Seven Thousand Seven Hundred Seventy-Seven Dollars and 36 Cents ($2,277,775.36), in accordance with the contract and all addenda thereto attached

---

[3] The summary pages of the Appraisals are attached as Exhibit A.  Upon request, counsel for the Debtors will provide copies of the complete documents.

hereto as **Exhibit B** (the "**Offer**").  Ryan Moore, the Debtors' son and owner of OSF, operates

his own farming operations through one or more entities and currently rents farmland from the

Debtors.  Ryan Moore also holds an unsecured claim against the Debtors, and currently employs

the Debtors to assist with his farming operations.

11.    The Property is encumbered by unreleased liens, including all known deeds of

trust, judgments and tax liens as indicated in the charts below labeled as the "Lien Charts."

12.    The Lien Charts below describe the liens encumbering the Property with respect

to each Parcel Group.

## A.    Lien Chart – Parcel Group A

| Name and Address of Entity Claiming an Interest | Type & Extent of Interest/Lien Created/Recorded | Recording Reference | Estimated Outstanding Balance of Claim[4] |
|---|---|---|---|
| Benchmark Community Bank ("BCB") | July 24, 2020, deed of trust encumbering the whole of all parcels in Parcels Group A | Instrument no. 200000736, recorded on July 29, 2020 | $1,922,224.87 |
| Truist Bank | Judgment Entered March 20, 2023, against each of the Debtors | Recorded March 23, 2023, Judgment Dkt 230000152 (Jennifer Moore) and Dkt 230000153 (Glenn Moore) | $284,065.00 |
| Truist Bank | Judgment Entered March 20, 2023, against each of the Debtors | Recorded March 23, 2024.  Judgment Dkt 230000157 (Jennifer Moore) and Dkt 230000158 (Glenn Moore) | $1,015,574.00 |

---

[4] The Debtors reserve all rights to challenge the validity of the balance of the claim amounts asserted by the lien creditors but provide in these Lien Charts the figures made available to them by such creditors directly or as derived from source documents in order for all interested parties to evaluate this Motion.

| Internal Revenue Service | Federal Tax Lien for 2020 income tax liabilities owed by both Debtors | Recorded at Instrument No. 230000511, October 30, 2023 | $56,811.00 |
|---|---|---|---|
| Harvey Fertilizer and Gas Co. | Judgment Entered against each Debtor, as well as Moore Farms of Skippers Partnership, and Moore Farms of Skippers, LLC | Recorded November 3, 2023.  Judgment Dkt 230000513 | $1,006,897.45[5] |
| Internal Revenue Service | Federal Tax Lien for 2021 and 2022 income tax liabilities owed by both Debtors | Recorded at No. 240000161, March 12, 2024 | $37,180.68 |

## B.    Lien Chart – Parcel Group B

| Name and Address of Entity Claiming an Interest | Type & Extent of Interest/Lien Created/Recorded | Recording Reference | Estimated Outstanding Balance of Claim[6] |
|---|---|---|---|
| Truist Bank, as serviced by Specialized Loan Servicing LLC | Deed of trust granted by the Debtors | BB&T Instrument #090000573 recorded July 27, 2016 | $255,780.00 |
| Truist Bank | Judgment Entered March 20, 2023, against each of the Debtors | Recorded March 23, 2023, Judgment Dkt 230000152 (Jennifer Moore) and Dkt 230000153 (Glenn Moore) | $284,065.00 |

---

[5] This figure is based on Proof of Claim No. 4 filed by Harvey Fertilizer and Gas Co. on September 25, 2024.

[6] The Debtors reserve all rights to challenge the validity of the balance of the claim amounts asserted by the lien creditors but provide in these Lien Charts the figures made available to them by such creditors directly or as derived from source documents in order for all interested parties to evaluate this Motion.

| Truist Bank | Judgment Entered March 20, 2023, against each of the Debtors | Recorded March 23, 2024.  Judgment Dkt 230000157 (Jennifer Moore) and Dkt 230000158 (Glenn Moore) | $1,015,574.00 |
| Internal Revenue Service | Federal Tax Lien for 2020 income tax liabilities owed by both Debtors | Recorded at Instrument No. 230000511, October 30, 2023 | $56,811.00 |
| Harvey Fertilizer and Gas Co. | Judgment Entered against each Debtor, as well as Moore Farms of Skippers Partnership, and Moore Farms of Skippers, LLC | Recorded November 3, 2023.  Judgment Dkt 230000513 | $1,006,897.45 |
| Internal Revenue Service | Federal Tax Lien for 2021 and 2022 income tax liabilities owed by both Debtors | Recorded at No. 240000161, March 12, 2024 | $37,180.68 |

13.     By this Motion, the Debtors seek the entry of an order authorizing the sale of their interests in the Property free and clear of liens and encumbrances, with such liens attaching to the sale proceeds in the order of priority that existed as of the Petition Date and authorizing the distribution of sale proceeds to holders of claims secured by valid deeds of trust, judgments, tax liens, and other encumbrances in the order of priority existing as of the Petition Date.

## IV.    THE PROPOSED ASSUMPTION AND ASSIGNMENT OF THE OPTION AGREEMENT

14.     Prior to the Petition Date, Glenn Moore and Donald Moore executed: (a) effective August 19, 2021, the Option Agreement For Purchase And Sale Of Property with SolAmerica Energy, LLC ("**SolAmerica**") attached as **Exhibit C-1**, and (b) effective as of March 15, 2022,

the Amendment To Option Agreement For Purchase And Sale Of Property attached as **Exhibit C-2** (collectively, Exhibit C-1 and Exhibit C-2 are the "**Option Agreement**").  Under the Option Agreement, SolAmerica secured for a four-year period the right to exercise an option to purchase a portion of Parcel No. 35-3-D, up to a maximum of 10 acres, for $30,000 per acre.  The Option Agreement requires that SolAmerica exercise the option on or before August 19, 2025, and further requires payment of $4000 per year by SolAmerica to Glenn Moore and Donald Moore during the term of the Option Agreement, unless the Option Agreement is terminated earlier in accordance with its terms.

15.      The Debtors have reviewed the Option Agreement in connection with their efforts to maximize the value of their estate in this Chapter 12 proceeding, and the Debtors have determined that assigning the Option Agreement to OSF is in the best interests of the estate.  By the terms of the Option Agreement, the Option Agreement constitutes an interest in and encumbrance upon Parcel No 35-3-D which would otherwise run with the land and be binding upon any subsequent purchaser of the land.  OSF has requested the assignment of the Option Agreement as part of its purchase of the Property.  In order to facilitate the sale of the Property, the Debtors, in their business judgment, seek to assume and assign the Option Agreement to OSF as part of the sale of the Property.

16.      Accordingly, as set forth herein, the Debtors seek authorization to assume and assign the Option Agreement to OSF pursuant to Section 365 of the Bankruptcy Code.

### V.  BASIS FOR RELIEF: SALE OF DEBTORS' INTERESTS IN THE PROPERTY

#### A. Request For Authority To Sell To The Purchaser

17.      The Debtors, as debtors in possession under chapter 12, have "all the rights,

other than the right to compensation under section 330, and powers, and shall perform all the functions and duties, except the duties specified in paragraphs (3) and (4) of section 1106(a), of a trustee serving in a case under chapter 11, including operating the debtor's farm or commercial fishing operation." 11 U.S.C. § 1203.

18.     Section 363(b) of the Bankruptcy Code provides that a debtor-in-possession may sell property of the estate "other than in the ordinary course of business" after notice and a hearing.  11 U.S.C. § 363(b)(1). A debtor's sale of property outside the ordinary course of business should be approved if the debtor demonstrates a sound business justification for the proposed transaction. See *In re SW Boston Hotel Venture, LLC*, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010) ("Courts approve a Chapter 11 debtor in possession's use, sale or lease of property of the estate where the debtor has used reasonable business judgment and articulated a business justification for such use."); *Comm, of Equity Sec. Holders v. Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re United Healthcare Sys., Inc.*, Civ. No. 9701159, 1997 WL 176574, at *4, n.2 (D.N.J. Mar. 26, 1997).

19.     A debtor's decision to sell, use, or lease property of the estate other than in the debtor's ordinary course of business is also subject to the debtor's business judgment. See *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991).

20.     Once a trustee articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the [trustee] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the [estate]." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

21.     Further, Bankruptcy Rule 6004 provides that, "[a]ll sales not in the ordinary

course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1). "[T]he thrust of the statutory scheme"- in providing for either a public or private sale - is meant "to provide maximum flexibility to the [debtor], subject to the oversight of those for whose benefit [it] acts, i.e. the creditors of the estate." *In re NEPSCO, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983).

22.     Here, the Debtors satisfy the requirement that the sale be and is in the sound business judgment of the Debtors. Although the principal member and owner of OSF is an insider of the Debtors who also holds an unsecured claim against the Debtors, the sale terms are fair, reasonable, and in the best interests of the estate and the Debtors' creditors. The terms of the sale fall well within the range of reasonableness, and therefore satisfy the business judgment test.

23.     The purchase price offered by OSF is a fair price supported by valuations based on the Appraisals. In fact, the proposed purchase price exceeds the value identified in the Appraisals. Further, the proposed sale permits the sale of the Debtors' fractional interests in the Property, thereby avoiding the administrative expense, burden, limits, and risks of seeking a sale of all interests in the Property, which would require the forced sale of non-debtor Donald Moore's Property interests. Donald Moore has not consented to the sale of his interests in the Property pursuant to 11 U.S.C. § 363(h). In addition, the value for the estate is further maximized in that no real estate sales commissions or related expenses are due under this proposed sales contract to OSF. Lastly, the sale of the Property to OSF will permit the Debtors to continue to farm the land and earn income while working for OSF that will fund their chapter 12 plan, ultimately paving the way for a successful reorganization. For all these reasons, the Debtors respectfully submit that the sale price is reasonable and is in the Debtors' and the

estate's best interests.

24.      For these reasons, the proposed sale of the Debtors' interests in the Property to OSF is well within the Debtors' business judgment and should be approved.

### B. Sale Of The Property Free And Clear Of Liens, Claims, Encumbrances, and Interests

25.      A sale under 11 U.S.C. § 363(f) allows a debtor-in-possession to sell property free and clear of any interest in property if one of five stated conditions are met.

26.      Section 363(f), however, is modified by § 1206, sales free of interests, which provides that, after notice and a hearing, a trustee in a Chapter 12 case may sell farmland and farm equipment, as well as any property used to carry out a commercial fishing operation, including a commercial fishing vessel, free of any interest of an entity other than the estate; the proceeds then become subject to that interest.[7]

27.      Section 1206 modifies § 363(f) to allow family farmers to sell assets not needed for the reorganization prior to the confirmation without the consent of the secured creditor, but subject to Court approval.[8] *In re Brileya*, 108 B.R. 444, 446 (Bankr. D. Vt. 1989).

28.      Although Section 1206 speaks only of the trustee's ability to do so, a chapter 12 debtor is empowered to carry out such sales pursuant to Section 1203 of the Bankruptcy Code. *In re Webb*, 932 F.2d 155 (2d Cir. 1991); *Bryileya*, 108 B.R. at 446.  Congressional intent

---

[7] Section 1206 provides:

> After notice and a hearing, in addition to the authorization contained in section 363(f), the trustee in a case under this chapter may sell property under section 363(b) and (c) free and clear of any interest in such property of an entity other than the estate if the property is farmland or farm equipment, except that the proceeds of such sale shall be subject to such interest.

[8] The House and Senate Conferees observed, in the Conference Report to the Bankruptcy Act of 1986, that most family farm reorganizations involve the sale of unneeded property to scale down debt, and that Code § 363(f) should be modified to permit sales of farmland and farm equipment free of liens.  No. 958, 99th Cong., 2d Sess. 50 (1986).

is clear on this point in the legislative history. "This section modifies 11 U.S.C. § 363(f) to allow family farmers to sell assets…" H.R. Rep. No. 958, 99th Cong., 2d Sess. 50 (1986).

29.    Under Section 1206 of the Bankruptcy Code, a sale of farmland may be made free of liens or interests even if none of the grounds listed in 11 U.S.C. § 363(f) are satisfied.

30.    The Property that is the subject of the proposed sale is farmland, and the proposed sale is for more than fair-market value. It is in the best interests of the Debtors and the Debtors' estate that the Property be sold as proposed by this Motion since it is not necessary for the effective reorganization of the estate and a greater benefit will be derived from selling the Property. As such, the Court should grant the Debtors' Motion and approve the sale free and clear of liens under 11 U.S.C. § 1206.

### C. Distribution Of The Gross Proceeds Of Sale

31.    The offer of OSF does not allocate the gross proceeds of sale among the various parcels of the Property but instead conditions the sale of the Debtors' interests in all Property for the total purchase price.

32.    As indicated herein, the total purchase price represents fair consideration for the sale of the Debtors' interests in the Property based on the Appraisals.

33.    For purposes of this Motion, the Debtors allocate the gross proceeds of sale as follows after satisfaction of the typical and customary expenses assessed to the Debtors as sellers. As noted in Paragraph 8 of the real estate contract (Exhibit B), there are no commissions or other expenses that would otherwise be charged by a real estate professional under this proposed sale.

| Secured Creditor | Estimated Outstanding Balance of Claim | Distribution |
|---|---|---|
| Benchmark Community Bank ("BCB") | $1,922,224.87 | Full payoff as calculated at time of closing |
| Truist Bank, as serviced by Specialized Loan Servicing, LLC | $255,780.00 | Full payoff as calculated at time of closing |
| Truist Bank | $284,065.00 | All remaining sale proceeds in an amount of not less than  $100,000.00 to be distributed to Truist Bank up to the amount of its full payoff as calculated at time of closing |
| Truist Bank | $1,015,574.00 | No proceeds expected to be available to pay toward this claim after the satisfaction of superior liens |
| Internal Revenue Service | $56,811.00 | No proceeds expected to be available to pay toward this claim after the satisfaction of superior liens |
| Harvey Fertilizer and Gas Co. | $1,006,897.45 | No proceeds expected to be available to pay toward this claim after the satisfaction of superior liens |
| Internal Revenue Service | $37,180.68 | No proceeds expected to be available to pay toward this claim after the satisfaction of superior liens |

### D. Good Faith Purchaser

34.     The Debtors also request that OSF be granted 11 U.S.C. § 363(m) protection as

a good faith purchaser for value.

35.     OSF has offered to pay a significant sum of money for the Debtors' interests in

the Property – in fact, an amount higher than the appraised value.

36.      Although the member-owner of OSF is an insider of the Debtors, such status does not negate the good faith demonstrated throughout the sale process. "It is well established that a party's status as an insider does not automatically prevent it from being a purchaser in good faith." *Old Cold, LLC*, 558 B.R. 500, 516 (B.A.P. 1st Cir. 2016), *aff'd sub nom. In re Old Cold LLC*, 879 F.3d 376 (1st Cir. 2018); see also *Sabatini Frozen Foods, LLC v. Jones*, No. ll-CV-1294 SLT, 2013 WL 1345104, at *4 (E.D.N.Y. Mar. 29, 2013) ("Moreover, while a court may consider whether a potential purchaser is an insider as part of its § 363(m) analysis, [i]t is not 'per se bad faith' for an insider to purchase assets of a debtor, and 'a sale to him without more would not suffice to show a lack of good faith" (internal citations omitted)). For these reasons, a good faith finding pursuant to 11 U.S.C. § 363(m) is appropriate.

## VI. BASIS FOR RELIEF: ASSUMPTION AND ASSIGNMENT OF OPTION AGREEMENT

### A. Assumption Is An Exercise Of The Debtors' Business Judgment

37.      Section 365 provides that a Chapter 12 debtor, subject to bankruptcy court approval, may assume or reject executory contracts at any time prior to plan confirmation. 11 U.S.C. § 365(a) and (d)(2). The standard governing bankruptcy court approval of a debtor's decision to assume or reject executory contracts is whether the debtor's reasonable business judgment supports assumption or rejection. *See, e.g.*, *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (debtor's decision to assume or reject executory contract is governed by business judgment standard and can only be overturned if the decision was the

product of bad faith, whim, or caprice); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of lease "will be a matter of business judgment by the bankruptcy court" (citation omitted)); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989) (same).

38.     If the debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. *See Grp. of Inst. Investors v. Chi. M. St. P. & P.R.R. Co.*, 318 U.S. 523 (1943); *Sharon Steel*, 872 F.2d at 39–40. The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.*), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assocs.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y 1984)). Any more exacting scrutiny would slow the administration of a debtor's estate, increase costs, interfere with the Bankruptcy Code's provision for private control of the administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) (citation omitted).

39.     Here, the Debtors' reasonable business judgment supports the assumption and assignment of the Option Agreement to OSF as it will aid in the proposed sale of the Property to OSF which the Debtors have determined is in the best interests of the estate and the reorganization of the Debtors' operations.

**B. The Debtors Have Satisfied the Requirements of Adequate Assurance Relating to Cure Amounts and Future Performance**

40. For a debtor to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1)(A).

41. The Debtors submit that they have performed their obligations under the Option Agreement to be assigned to OSF, and no monetary or non-monetary cure obligations are required. The Debtors have performed and continue to perform all of their undisputed postpetition obligations pursuant to the Option Agreement in the ordinary course. The Debtors will continue performing under the Option Agreement until the date that the assumption and assignment of the Option Agreement to OSF becomes effective.

**C. The Assignee Has Provided Adequate Assurance of Future Performance**

42. The assignment of executory contracts and unexpired leases is governed by Section 365(f), which provides, in pertinent part, that:

> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if –
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

43. Once an executory contract is assumed, Section 365(f) allows the debtor to assign such contract to a third party if the debtor also provides adequate assurance of future performance by the proposed assignee. *See L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel*

*Home Ctr., Inc.*), 209 F.3d 291, 299 (3d Cir. 2000) (indicating that "[t]he Code generally favors free assignability as a means to maximize the value of the debtor's estate"); *Leonard v. General Motors Corp.* (*In re Headquarters Dodge, Inc.*), 13 F.3d 674, 682 (3d Cir. 1994) (noting that the purpose of Bankruptcy Code section 365(f) is to assist the trustee in realizing the full value of the debtor's assets).

44.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, and should be "given a practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009); *EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp.* (*In re Sanshoe Worldwide Corp.*), 139 B.R. 585, 592 (S.D.N.Y. 1992); *In re Decora Indus.,* 2002 U.S. Dist. LEXIS 27031, at * 23 (D. Del. 2002) (stating that "adequate assurance falls short of an absolute guaranty of payment" (citation omitted)); *Carlisle Homes, Inc. v. Azzari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

45.     OSF as the assignee is able to provide adequate assurance of future performance under the Option Agreement.  Upon information and belief, SolAmerica consents to the assumption and assignment of the Option Agreement to OSF as proposed herein.

46.     Notwithstanding the expected consent of SolAmerica to the assignment described herein, the Debtors request that the Option Agreement be assigned to OSF regardless of any provision of the Option Agreement that may prohibit such assignment. Section 365(f)(1) allows the debtor to assign an executory contract or lease notwithstanding a provision in the contract or lease or law prohibiting, restricting, or conditioning the assignment. Section 365(f)(3) also provides that any provision in an executory contract or unexpired lease that serves to terminate or modify such contract or lease based on an assignment is unenforceable. Sections 365(f)(1) and

(3) facilitate the free assignability of executory contracts and leases for the purposes of enhancing the value of a debtor's estate. *Rickel Home*, 209 F.3d at 299.

## VII. <u>NOTICE</u>

47.      As a chapter 12 debtor proceeding with the powers of a chapter 11 trustee for the sale of property outside of the ordinary course of business under 11 U.S.C. § 363(b)(1), the Debtors have complied with the requirements of Bankruptcy Rules 2002(a)(2) and (c) and 6004. Bankruptcy Rule 2002(a)(2) requires not less than 21 days' notice by mail, unless the Court, for cause, shortens the time or directs another method of giving notice. Bankruptcy Rule 2002(c) requires that the notice of sale describes generally the property to be sold and includes terms and conditions of any private sale.

48.      The notice provided by the Debtors states the time fixed for filing objections, which, pursuant to Bankruptcy Rule 6004(b), must be no less than seven days before the date set for the sale hearing, or within any other time fixed by the Court.

## VIII. <u>EFFECTIVE DATE OF ORDER</u>

49.      Bankruptcy Rule 6004(h) provides that an order authorizing the sale of property is stayed until fourteen (14) days after entry of the order, unless the Court orders otherwise.  Under the circumstances of this case, and absent any objection to the proposed sale, cause exists for the Court to make its order granting this Motion effective immediately upon entry as permitted by Bankruptcy Rule 6004(h), so that the closing may proceed without further delay.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially similar to the proposed order attached as **Exhibit D**, authorizing the sale of their interests in the Property to OSF according to the terms described herein, authorizing the Debtors

to assume and assign the Option Agreement to OSF, and granting such other relief as the Court

may deem appropriate.

Respectfully submitted,

October 11, 2024                         GLENN RANDOLPH MOORE
                                         JENNIFER MICHELLE FERGUSON MOORE

                                    By: */s/ David Cox*_____
                                         Proposed Counsel for the Debtors

David Cox VSB 38670
COX LAW GROUP, PLLC
900 Lakeside Drive
Lynchburg, VA 24501
434/845-3838 (direct)
434/845-3838 (facsimile)
david@coxlawgroup.com
*Counsel for the Debtors*

## Certificate of Service

I certify that, on October 11, 2024:

1. The foregoing Motion was electronically filed with the Clerk of Court using the CM/ECF system, which will send e-mail notice/service of such filing to those listed on the Electronic Mail Notice.

2. Copies of the foregoing Motion were sent by first class mail, postage paid to all creditors and parties in interest as reflected on the attached matrix filed with the Court.

/s/ David Cox

## Service List

*The following parties in addition to those identified on the attached mailing matrix:*

Angela M. Scolforo, Chapter 12 Trustee
P.O. Box 2103
Charlottesville, Virginia 22902

Jennifer J. West
Spotts Fain
Counsel for Benchmark Community Bank
411 E. Franklin St., Ste 600
Richmond, VA 23219

Peter M. Pearl
Spilman Thomas & Battle, PLLC
Counsel for Truist Bank
310 First Street, Suite 1100
Roanoke, VA 24011

Jennifer McLain McLemore
Williams Mullen
Counsel for SolAmerica
200 South 10th Street, Suite 1600
P.O. Box 1320
Richmond, VA 23219

J. Michael Fields
Ward and Smith, P.A.
Counsel for Harvey Fertilizer and Gas Co
Post Office Box 8088
Greenville, NC 27835-8088
252.215.4026
fax:252.215.4077

Robert McIntosh, VSB No. 66113
Assistant United States Attorney
600 East Main Street, Suite 1800
Richmond VA 23219

Wendy Yan
Department of the Treasury
Internal Revenue Service
33 Maiden Lane, 14th Floor
New York, NY 10038

Label Matrix for local noticing
0422-3
Case 24-33168-KLP
Eastern District of Virginia
Richmond
Fri Oct 11 13:43:11 EDT 2024

Benchmark Community Bank
c/o Spotts Fain PC
411 E. Franklin St.
Suite 600
Richmond, VA 23219-2200

Truist Bank
c/o Peter M. Pearl
Spilman Thomas & Battle PLLC
P. O. Box 90
Roanoke, VA 24002-0090

(p)AMERICOT
5013 122ND STREET
LUBBOCK TX 79424-8281

Benchmark Bank
9056 N Mecklenburg
South Hill, VA 23970

CNH Industrial Capital
PO Box 71264
Philadelphia, PA 19176-6264

Client Services, Inc.
3451 Harry S Truman Blvd
St Charles, MO 63301-9816

Deere & Company d/b/a John Deere Financial
c/o Weltman, Weinberg & Reis Co., LPA
5990 West Creek Road, Suite 200
Independence, OH 44131-2191

Donald Moore
3727 Skippers Rd
Skippers, VA 23879-2070

Harvey Fertilizer and Gas Co.
Po Box 189
Kinston, NC 28502-0189

Harvey Fertilizer and Gas Co.
c/o J. Michael Fields, Esq.
Post Office Box 8088
Greenville, NC 27835-8088

Internal Revenue Service
P O Box 7346
Philadelphia, PA 19101-7346

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

JPMorgan Chase Bank, N.A.
s/b/m/t Chase Bank USA, N.A.
c/o National Bankruptcy Services, LLC
P.O. Box 9013
Addison, Texas 75001-9013

James River Equipment
98 Expo Road
Fishersville, VA 22939-2307

Jennifer West, Esq
411 E Franklin St Ste 600
Richmond, VA 23219-2200

(p)DEERE CREDIT SERVICES  INC
ATTN LITIGATION & RECOVERY DEPARTMENT
PO BOX 6600
JOHNSTON IA 50131-6600

Local Seed Company n/k/a Revere Seed
3130 US-61
Leland, MS 38756

(p)M&T BANK
LEGAL DOCUMENT PROCESSING
626 COMMERCE DRIVE
AMHERST NY 14228-2307

Michael J. Parrish, Esq.
Po Box 867
New Bern, NC 28563-0867

Moore Brothers Partnership
PO Box 328
Skippers, VA 23879-0328

Moore Brothers Partnership
PO Box Box 328
Skippers, VA 23879-0328

Moore Farms of Skippers LLC
300 S Main St
Emporia, VA 23847-2028

Moore Farms of Skippers Partnership
300 S Main St
Emporia, VA 23847-2028

Ole South Farms LLC
Po Box 100
Skippers, VA 23879-0100

P. George Eliades, II, Esq.
14000 N Enon Church Rd
Chester, VA 23836-3312

Peter M. Pearl, Esq.
310 1st St Sw Ste 1100
Roanoke, VA 24011-1916

Quality Equipment
307 S Main St
Seaboard, NC 27876

RPM Farms, LLC
Po Box 100
Skippers, VA 23879-0100

Revere
802 Rozelle St
Memphis, TN 38104-5052

Ryan Moore and RM Farms, LLC
Po Box 100
Skippers, VA 23879-0100

SolAmerica Energy, LLC
190 Ottley Dr Ne Studio H
Atlanta, GA 30324-4060

Southern Farms of VA LLC
300 S Main St
Emporia, VA 23847-2028

Specialized Loan Servicing LLC
Attn: Bankruptcy
P.O. Box 630147
Littleton, CO 80163-0147

Suntrust Bank n/k/a Truist Bank
Attn: Bankruptcy
Mail Code VA-RVW
PO Box 85092
Richmon, VA 23285-5092

Synchrony Bank/Lowes
Attn:  Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Transworld Systems
Po Box 15130
Wilmington, DE 19850-5130

Truist Bank
Po Box 849
Wilson, NC 27894-0849

Truist Bank
Po Box 85041
Richmond, VA 23285-5041

Truist Bank, Support Services
PO Box 85092
Richmond, VA 23285-5092

U.S. Small Business Administration
409 3rd St. SW
Washington, DC 20416-0002

Virginia Department of Taxation
Atten: Bankruptcy Unit
PO Box 2156
Richmond, VA 23218-2156

Wall Residences
Po Box 235
Floyd, VA 24091-0235

Wheeler Rental Properties, LLC
300 S Main St
Emporia, VA 23847-2028

Angela M. Scolforo, Trustee
Office of the Chapter 13 Trustee
P.O. Box 2103
Charlottesville, VA 22902-2103

Gerard R. Vetter
Office of the US Trustee - Region 4 -R
701 E. Broad Street, Ste. 4304
Richmond, VA 23219-1849

Glenn Randolph Moore
PO Box 10
Skippers, VA 23879-0010



J. Michael Fields
Ward and Smith, P.A.
Post Office Box 8088
Greenville, NC 27835-8088

Jennifer Michelle Ferguson Moore
PO Box 10
Skippers, VA 23879-0010